MURIEL FRAPPIER, *p.a. vs.* LEONA FRAPPIER.

EUGENE DAIGLE *et al. vs.* SAME.

JANUARY 8, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. These are petitions for the adoption of Muriel Frappier, aged five years, who is the sole surviving child of Joseph Frappier and Virginia Frappier, late of the city of Woonsocket, deceased. The petitions are here on the exceptions of petitioner Leona Frappier to the rulings of the superior court. They were originally filed in the probate court of the city of Woonsocket and were brought to the superior court on the appeals of Muriel Frappier by her uncle and next friend, Eugene Daigle, and of the said Eugene Daigle and Violetta Daigle.

Leona Frappier is a sister of Joseph Frappier. Eugene Daigle is a brother of Virginia Frappier. He and his wife, Violetta Daigle, are the godparents of Muriel Frappier. Since the decease of her father and mother, and for a brief period prior thereto, Muriel has lived with her aunt Leona Frappier.

Leona Frappier filed her petition for the adoption of Muriel on June 7, 1938, first having obtained the written consent thereto of Muriel's father, Joseph Frappier. At that time he was confined in the state sanatorium at Wallum Lake, where he died on July 27, 1938. The consent of the mother, Virginia Frappier, was not requested because of a mental affliction which she was then suffering from and by reason of which, on June 9, 1938, she was adjudicated insane and committed to the state hospital for mental diseases, where she died on July 28, 1938.

In accordance with the provisions of general laws 1938, chapter 420, § 5, the state department of public welfare was duly notified of the filing of this petition. Under that statute it is the duty of that department, upon receiving such notice, "to verify the allegations of the petition, and to make appropriate inquiry to determine whether the proposed foster home is a suitable home for the child."

However, since the mother Muriel had not consented to the petition and was too ill to be interviewed, the department of public welfare suggested that the petition be continued until such time as the mother could be questioned concerning it. This was accordingly done, but the mother never recovered sufficiently to be interviewed. After the death of the mother, the petition was further continued from time to time until December 13, 1938, on which date it was heard and granted by the probate court. In the meantime, however, on September 2, 1938, the department of public welfare disapproved the petition

and recommended that it be denied. This adverse recommendation was before the probate court of the city of Woonsocket when it heard and granted the petition.

On September 8, 1938, while the petition of Leona Frappier was still pending, Eugene Daigle and Violetta Daigle, filed their petition for the adoption of Muriel. Notice of the filing of their petition was also duly given to the state department of public welfare and that department, by letter of September 30, 1938, advised the probate court that it had investigated these petitioners and had inspected their home, and that it recommended the granting of their petition. This report was filed with the probate court on October 3, 1938 and was, therefore, before that court when it considered the Frappier petition on December 13, 1938.

The record of the probate court shows that on the latter date these petitioners filed a motion in writing "that the court proceed with the hearing of their petition", and that this motion was then and there denied, apparently for the reason that the court had already granted the petition of Leona Frappier. The Daigles appear to have deemed this decision of their motion tantamount to a decree or order denying their petition, and the probate court apparently did likewise, since the petition is indorsed,—"Disallowed. December 13, 1938." Accordingly, these petitioners filed a claim of appeal from this decision and they duly filed their reasons of appeal in the superior court.

Muriel Frappier, by her uncle and next friend, Eugene Daigle, filed a claim of appeal from the decree of the probate court, granting the petition of Leona Frappier, and duly prosecuted said appeal to the superior court. These appeals were heard together in the superior court without objection on the part of Leona Frappier. Inasmuch

as no objection was made to the appeal from the decision of the probate court on the Daigles' motion to proceed with the hearing of their petition and inasmuch as the superior court undoubtedly, by virtue of the appeal of Muriel Frappier from the decree granting Leona Frappier's petition, had jurisdiction of the subject-matter before it, namely, the adoption of Muriel Frappier, we shall consider that it was proper for it to entertain the appeal of the Daigles together with Muriel's appeal. In the superior court Leona Frappier was referred to as the appellee and she is sometimes hereinafter referred to as such.

At the trial in the superior court, the issue of adoption was left to the jury. They found that the petition of the Daigles should be granted and that the petition of Leona Frappier should be denied. The effect of the verdicts of the jury was a reversal of the action of the probate court in each case. Leona Frappier then moved, in the superior court, for a new trial on the grounds that the verdicts were against the law, against the evidence, against the law and the evidence and the weight thereof. The trial justice denied these motions and Leona Frappier duly excepted thereto. This exception is numbered 2 in her bills of exceptions and is the only exception in each bill that we may properly consider.

The only other exception is stated in each bill as follows: "1. All the exceptions taken by the appellee in the course of the trial in the Superior Court." Manifestly this statement does not fulfill the requirements of G. L. 1938, chap. 542, § 5, and the decisions of this court construing that section. It is provided by § 5 that a person or party who has taken exceptions and who has filed notice of his intention to prosecute a bill of exceptions to the supreme court, "shall file in the office of the clerk of the superior court his bill of exceptions, in which *he shall state separately and clearly* the exceptions relied upon." (italics ours)

This statute prescribing procedure in prosecuting a bill of exceptions to this court has been held to be jurisdictional. *Labonte* v. *Alvernaz,* 47 R. I. 226; *Stanton* v. *Hawkins,* 41 R. I. 501; *Batchelor* v. *Batchelor,* 39 R. I. 110. And in *Hartley* v. *Rhode Island Co.,* 28 R. I. 157, it was said: "The privilege of review by a bill of exceptions . . . is contingent upon a diligent observance of the conditions imposed." Speaking of the construction of the statute, the court also said: "A strict construction of statutes relating to bills of exceptions everywhere prevails."

In more recent cases we have called attention to this requirement. For example, as recently as *Metcalf* v. *Interstate Transit Corp.,* 61 R. I. 486, we said that the statutes "prescribing the time and manner of procedure to be followed by a litigant in securing a review of his case in the appellate court are to be strictly construed." See also *Giguere* v. *LaPointe,* 56 R. I. 475, and *Mechanics National Bank* v. *Tomasian,* 57 R. I. 247.

An extended discussion of the requirements for the statement of exceptions separately and clearly in bills of exceptions is contained in the opinions in *Blake* v. *Atlantic National Bank,* 33 R. I. 109 and *Dunn Worsted Mills* v. *Allendale Mills,* 33 R. I. 115, decided a few years after the enactment of the court and practice act of 1905. And earlier, in *Enos* v. *Rhode Island Suburban Ry. Co.,* 29 R. I. 297, a case where certain exceptions were not separately and clearly set out, the court definitely pointed out the reason and necessity for obliging the party seeking review in this court to set out his exceptions separately and clearly in his bill.

While there are a few cases where this court has not insisted upon the strict letter of this obligation, they are cases in which the party seeking review set out his exceptions separately, in substantial compliance with the statute, although he did not do so as precisely in every

respect as proper practice required. Recent examples of such cases are *Keefe* v. *United Electric Rys Co.*, 59 R. I. 423, *Pompie* v. *Cassetta*, 63 R. I. 74, 7 A. 2d. 198. In neither of those cases nor in any other case that we have examined have we found such an omnibus statement of exceptions as exception numbered 1 in the present bill of exceptions. We cannot, consistently with the precedents and the plain language of § 5 of chap. 542, treat this as a valid statement of exceptions which we must consider. Clearly it should not have been allowed in such form by the justice of the superior court, and the fact that it was allowed does not cure the defect.

Numerous rulings were made by the trial justice throughout the trial over the objections of the appellee, Leona Frappier, and to which rulings she took exceptions. If she intended to rely on all or only on some of these exceptions, she should have identified them by pointing out in her bill of exceptions, not in her brief, the exception and the page on which each one was noted in the transcript. This she completely failed to do. She is thus left with only her exception to the denial of her motion for a new trial, which we shall now consider.

Leona Frappier objects here to the verdict of the jury in each of these cases, because of the form in which each verdict was returned by the jury and received by the clerk at the trial. This objection is not open to her in this court, as she did not object to the form of these verdicts as they were recorded. Neither did she except at that time to the ruling of the trial justice ordering the clerk to receive the verdicts in the form in which they were recorded. Furthermore, even though she could press such objection, it would avail her nothing, as each verdict is substantially in accordance with the charge of the court, which was not excepted to by her, namely, that the problem the jury had to solve was "whether Leona Frappier should

be chosen by you as the future parent of Muriel Frappier, or whether Mr. and Mrs. Daigle are to be chosen by you as the future parents of Muriel Frappier; or whether you are to reject Leona Frappier and Mr. and Mrs. Daigle as future parents of Muriel Frappier."

While the clerk did not record the verdicts in the precise language by which the foreman answered the clerk's oral inquiry as to what were the verdicts, nevertheless, these verdicts were signed by the foreman after they had been read to the jury and appear in the records as their verdicts. The effect of them is to do as the jury clearly intended, namely, to select the Daigles as the adoptive parents of the child and to disapprove the choice of the probate court, Leona Frappier, as such parent.

Leona Frappier also argues that the verdicts are a "mere substitution of the judgment of the jury to that of the probate court", and therefore against the law. That objection cannot be raised here because the jury were expressly charged to determine for themselves whom they should select as the parents of the child, without reference to what the probate court had done, and no exception was taken to that charge. There is no contention made that they failed to follow the law as given to them by the court.

She further urges, on her exception to her denial of the motion for a new trial, that the verdicts are against the evidence and the weight of the evidence. In considering this argument we have carefully read the transcript and have obtained from such reading a very definite picture of the problem confronting the jury in the light of the evidence before it. We gathered the impression therefrom that the jury could have reasonably found either of these petitioners would, in all probability, be proper parents for the child. But it was within their province to decide which was the more appropriate choice.

We are only called upon to decide, from our examination of the evidence, whether the trial justice's denial of the motion for a new trial was clearly wrong. On the evidence here, we cannot say that he was clearly wrong. The trial justice had the advantage of hearing all the witnesses testify and of observing the demeanor of each of them on the witness stand, particularly the petitioners. This advantage placed him in a much better position to pass upon the verdicts and particularly upon the respective merits of the petitioners as the adoptive parent or parents of the child than we are with merely the transcript before us. Under such circumstances, the well-established rule that the verdict of the jury, approved by the trial justice, is not to be disturbed, unless clearly wrong, applies with special force.

Therefore, the appellee Leona Frappier's exception in each case to the denial of her motion for a new trial is overruled, and each case is remitted to the superior court for further proceedings.

*Felix A. Toupin,* for Leona Frappier.

*Edward F. Dwyer, Morris E. Yaraus,* for Eugene Daigle *et al.*